CITY OF BANGOR *vs.* INHABITANTS OF WISCASSET.

Penobscot. Opinion December 20, 1880.

*Insane persons. Support in hospital. Settlement. Husband and wife. Notice.*

The commitment and residence of an insane wife in the insane hospital does not affect "the period of the residence" of the husband necessary to change his settlement.

The husband may gain a new settlement by five years' successive residence in any town without receiving pauper supplies directly or indirectly though the insane wife may be in the insane hospital and supported by the town.

Support furnished an insane wife in the hospital are not pauper supplies and do not affect the husband's residence or prevent his gaining a new residence. The settlement of the wife though in the insane hospital follows that of the husband though he may change it during such residence.

A notice describing the insane person as a pauper but stating that she was supported in the insane hospital and correct in other particulars, is not defective by reason of her being called a pauper. A misdescription of the residence of an insane person in proceedings instituted.by the town in the probate court do not constitute any estoppel or prevent the town from contesting her settlement.

The liability of the insane person to remunerate the town committing such person depends on the ability to pay. The husband is primarily liable for the wife's support, "if able."

The liability of the insane wife to pay for her support does not arise till after the death of the husband and upon her having or receiving means wherewith to pay.

There is no debt when there is not an ability to pay and the insane person is not liable unless such ability exists.

ON AGREED STATEMENT of facts the material portions of which appear in the opinion.

*T. W. Vose,* city solicitor, for the plaintiffs.

Upon the question of settlement, cited: *Glenburn* v. *Naples,* 69 Maine, 68.

Gould died in September, 1876. By R. S., c. 24, § 34, Louisa Gould, or her estate, was liable to the city of Bangor for her support after that time. The guardian had a right to pay that indebtedness, the city had a right to appropriate so much as it had in its treasury, or to retain it to be appropriated by law. The law would appropriate it to the oldest indebtedness.

*George B. Sawyer,* for the defendants.

The most noticeable feature of the authority relied upon in the ingenious argument of the plaintiff's counsel, (*Glenburn* v. *Naples,*

69 Maine, 68,) is its entire dissimilarity to the case at bar. It does not depend upon nor involve the construction of the law of 1870, but was decided under the law as it stood prior to that date. It is not different in principle from *Pittsfield* v. *Detroit*, 53 Maine, 442.

Counsel cited on the question of settlement: R. S., 1841, c. 178, § 13; *Id.* c. 32, § § 5, 6; stat. 1841, c. 1, § 6; *Id.* c. 173, stat. 1842, c. 36; *Garland* v. *Dover*, 19 Maine, 441; *Poland* v. *Wilton*, 15 Maine, 363; *Alna* v. *Plummer*, 4 Maine, 258; *Hanover* v. *Turner*, 14 Mass. 227; R. S., 1857, c. 143; stat. 1870, c. 127; *Cooper* v. *Alexander*, 33 Maine, 453; *Eastport* v. *Belfast*, 40 Maine, 262; *Jay* v. *Carthage*, 53 Maine, 128; *Eastport* v. *East Machias*, 40 Maine, 280; *Orono* v. *Peavey*, 66 Maine, 60; *Overseers* v. *Gullifer*, 49 Maine, 360; *Hampden* v. *Newburgh*, 67 Maine, 370; *Kennebunk* v. *Alfred*, 19 Maine, 221; *Drew* v. *Drew*, 37 Maine, 389; *Atkinson* v. *White*, 60 Maine, 396.

APPLETON, C. J. This is an action to recover the expenses incurred by the plaintiffs for the support of Louisa Gould in the Insane Hospital where she was sent in 1865, and has ever since remained.

It is admitted that the residence and legal settlement of Abiel Gould, the husband, was, at the time of the commitment of his wife, in Bangor. After 1865 he resided a portion of the time in Wiscasset. In January, 1871, he purchased a farm there on which he resided and had his home, until April 14, 1876, when he sold the same, remaining, however, there till his death in the following September. During all this time, he voted every year in the defendant town and paid his poll tax and the taxes assessed on his real and personal estate.

The main questions presented are whether the facts of his wife's insanity and her continued support by the plaintiff town at the Insane Hospital prevented the husband from gaining a settlement in the defendant town by virtue of his continued residence there for five successive years, and whether the wife's settlement followed that of the husband.

There are questions of minor importance, all of which will be duly considered.

1. The city of Bangor was in the first instance chargeable for the support of Mrs. Gould. By R. S., 1857, c. 143, § 20, "Any town thus made chargeable in the first instance, and paying for the commitment and support of the insane in the hospital, may recover the amount paid of the insane, if able, or of persons legally liable for his support, or of the town where his legal settlement is, as if incurred for the ordinary expenses of any pauper; but if he has no legal settlement in this State, such expenses shall be refunded by the state, and the governor and council shall audit all such claims, and draw their warrant on the treasurer therefor. No insane person shall suffer any of the disabilities incident to pauperism, nor shall be hereafter deemed a pauper by reason of such support."

While this statute was in force and before its amendment, it was decided in *Pittsfield* v. *Detroit*, 53 Maine, 442, that an insane person sent to the insane hospital as a patient by the municipal officers of the town in which he has established his residence, does not thereby lose it, but it continues during his residence in the hospital. His residence is there for a temporary purpose. Its duration is uncertain. It is like that of a sailor on a voyage, or one absent on a journey or for the purpose of labor, when there is no intention of abandoning the existing residence or gaining a new one. A settlement may thus be gained by a residence commenced when the insane person was sent to the hospital and continued for the period of five years.

The support furnished there is not support for a pauper. It is not to have the effect of pauper supplies. The statute under which the support is furnished, forbids this, as was held in the somewhat analogous case of aid furnished soldiers in the service during the rebellion. *Veazie* v. *China*, 50 Maine, 518.

2. By the act of 1870, c. 127, an addition was made to c. 143, § 20, of R. S., 1857, in these words: "But the time during which the person is so supported shall not be included in the period of residence necessary to change his settlement." R. S., 1871, c. 143, § 20.

In other words, the time spent in the hospital shall not be a part of the five years' continuous residence, by which a new settlement was gained, as was held to be the law in *Pittsfield* v. *Detroit.* The additional clause was enacted to nullify the effect of that decision. It applies only to the insane person. It affects no one else. It presupposes one, who if sane, could by his own act and volition change his settlement. It assumes the man or woman to be of full age and not under control. But the wife by marriage loses her own settlement and acquires that of her husband and follows and accompanies his, howsoever he may change it. The wife cannot change it or gain a new one, irrespective of the will of the husband. *Parsons* v. *Bangor,* 61 Maine, 457; *Porterfield* v. *Augusta,* 67 Maine, 557.

The insane wife is not to be "deemed a pauper." She has incurred none of "the disabilities incident to pauperism." Having incurred none, she cannot create or impose any, for be it remembered, she is the person "*so* supported," and not her husband.

The municipal officers have duties to perform to the insane who are incapable of self care and self protection. They are duties of charity. The aid furnished is charitable. It is to be recovered by the town rendering it, not as pauper supplies, but "as if incurred for the ordinary expense of any pauper." The process by which recovery is had is the same as in case of pauper supplies, but that is all.

3. By R. S., c. 24, § 1, clause 1, "a married woman has the settlement of her husband if he has any in the state." The wife has and continues to have the settlement of the husband, however it may change. It would be a grave "disability" if it were otherwise. When the husband acquired a settlement by five continuous years, without receiving supplies directly or indirectly in Wiscasset, such settlement became that of the wife, from and after it was so acquired. They cannot have separate and distinct settlements.

It follows that the wife having the settlement of her husband and he having gained one in the defendant town, that the defendants would on these facts be liable. *Glenburn* v. *Naples,* 69 Maine, 68.

4. But Abiel Gould died September 2, 1876. The liability of the insane to pay for support in the hospital depends on ability. The statute imposes the obligation to pay, "if able," otherwise there is no liability on the part of the insane. *Orono* v. *Peavey*, 66 Maine, 60. During the life of the husband, he was primarily liable. No attempt was made to enforce his liability. The wife was not liable. Her liability did not arise until and upon the appointment of a guardian, the allowance by the judge of probate and its payment. The sum allowed by him, as appears by the probate records, was two hundred and fifty dollars. This allowance and its payment was in 1878. Before this, all was contingent—whether there would be an allowance, and if so to what amount and whether it would be paid. Until the payment, there could be no existing liability on her part.

Assuming a liability to exist after the payment, then this allowance is to be appropriated to the support of the insane after her ability, such as it was, accrued, and for which the defendants after due notice are liable. Before that time there was no ability to pay, nor consequent liability—there was no indebtedness on her part to which this money could be appropriated.

The plaintiffs are to appropriate the sum by them received to claims arising since its reception, for which the defendants are liable. It is admitted that in May, 1878, the plaintiff received through the guardian of Mrs. Gould, two hundred and fifty dollars in lieu of her dower, and her distributive share in the estate of her late husband. This is the first moment when it could be pretended that the insane wife could be liable for her own support. Before that she was not a debtor, to which this amount could be applied. It should therefore be appropriated to the reduction of the plaintiffs' claims for support subsequently furnished. But, that, in this case, is but $135.59. It is therefore over paid by the amount already received from the estate of the widow, and a nonsuit must be entered.

5. The notices given describe Mrs. Gould as a pauper, but state that she was supported in the insane hospital. All the important facts are set forth therein, and we do not think the defendants are to be absolved from legal liability by reason of

calling her a pauper, when it was clear that the demand was for support in the hospital.

6. The writ has two counts—for supplies furnished Mrs. Gould as a pauper—the other for support in the hospital.

The plaintiffs set forth their claim in these alternative counts, to which there is no objection.

7. When a guardian, at the instance of the city, was appointed for Mrs. Gould, she was described in the probate proceedings as of Bangor. But such description does not constitute an estoppel, so that the city cannot deny her settlement.

*Plaintiff nonsuit.*

WALTON, DANFORTH, VIRGIN, PETERS and LIBBEY JJ., concurred.