INHABITANTS OF GUILFORD *vs.* INHABITANTS OF MONSON.

Piscataquis.     Opinion, May 29, 1936.

262

*John P. White*, for plaintiff.
*Pattangall, Williamson, Birkenwald,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

MANSER, J.   On report upon agreed statement of facts. Assumpsit for reimbursement for pauper supplies furnished to three minor children.

The facts necessary for a determination of the case, as shown by the agreed statement of the parties, are as follows: Francis Jerome Dudley is the father of three legitimate minor children. His wife, Lelia, was divorced from him upon her libel, on September 24, 1923. The pauper settlement of the father has been continuously in the defendant town of Monson. Sometime after the divorce, Lelia Dudley married one Clyde Leighton, whose pauper residence during the time covered by the writ was in the town of Willimantic in this State. After the divorce, pauper supplies were furnished by the plaintiff town of Guilford for the minor children. The defendant town, where the father of the children admittedly had his pauper settlement, reimbursed the plaintiff town for all of such supplies up to August 1, 1933. From that time until July 6, 1935, the plaintiff town continued to furnish pauper supplies for the children, but the defendant town has denied liability, upon the ground that the pauper settlement of these minors was changed by virtue of the provisions of P. L. of 1933, Chap. 203, and remained so changed until the repeal of this law, which took effect July 6, 1935.

For more than a century, by language of the same import and since the revision of 1857 in the same verbiage, our statutes provided that "Legitimate children have the settlement of their father, if he has any in the state; if he has not, they have the settlement of their mother within it; but they do not have the settlement of either, acquired after they are of age and have capacity to acquire one." R. S., Chap. 33, Sec. 1. The law thus stood in 1923, when the divorce was granted. Such divorce effected no change in the pauper settlement of the minor children. The defendant town, where the

father had his settlement, was responsible for pauper supplies furnished to his children.

In 1929, by P. L., Chap. 191, this section was amended by adding thereto the words: "Minor children of divorced parents, if given into the custody of either parent by the decree of divorce, shall follow the settlement of the parent to whom custody is given; if custody is not given, such children shall follow the settlement of their father, unless emancipated."

This amendment had no application to the circumstances then existing in the present case, because it applied only in cases where parents were divorced after July 12, 1929.

Then followed the amendment of 1933, effective for two years, and repealed in 1935, with respect to stepchildren, and which is as follows: "Stepchildren have the settlement of their stepfather, if he has any in the state; if he has not, they shall be deemed to have no settlement in the state." P. L. 1933, Chap. 203, amending R. S., Chap. 33, Sec. 1, II.

The question of emancipation is not involved, as the report of agreed facts states the children in this case were not emancipated.

If this statute effects a change in the pauper settlement of the legitimate minor children of Dudley, then the defendant town is not liable for the period covered by the suit. If no change was effected, then it is liable. The amendment must be construed to determine whether unemancipated minor children of a living father who is divorced from his wife lose their pauper settlement derived from their father, and acquire settlement of the man whom the wife later marries. Did the new husband become their stepfather and did they become his stepchildren within the purview and intendment of the amended statute?

In construing the original statute, the Court has said in effect that the fundamental principle upon which it rested was that the settlement of legitimate children should be that of the father, whose duty it was to maintain and support them and who was entitled to their services. *Springfield* v. *Wilbraham*, 4 Mass., 493; *Portland* v. *New Gloucester*, 16 Me., 427; *Hampden* v. *Brewer*, 24 Me., 281; *Hampden* v. *Troy*, 70 Me., 484.

"It is also settled that at least during the life of the father, the mother, in the absence of any statutory provision, or decree relat-

ing thereto, not being entitled to the services of their minor children, is not bound by law to support them." *Gilley* v. *Gilley,* 79 Me., 292, 9 A., 623, 624.

With these principles well established, the Legislature in 1929, by P. L., Chap. 191, amended the section relating to legitimate children by adding the provision with reference to minor children of divorced parents.

While this amendment does not apply to the present case, it recognizes the underlying principle that settlement of children should follow that of the parent who was responsible for their support. This principle was pointed out in *Hall* v. *Green,* 87 Me., 122, 32 A., 796, that when a divorce is granted to a wife and the care and custody of a minor child is committed to her by decree, "It follows that the father becomes entirely absolved from the common law obligation which previously rested upon him to support such child."

Again, the common law rule is that "a stepfather, as such, is not under obligation to support the children of his wife by a former husband, but that, if he takes the children into his family or under his care in such a way that he places himself in *loco parentis,* he assumes an obligation to support them, and acquires a correlative right to their services." 20 R. C. L., 594.

Our Court expressed the same principle as follows: "The father-in-law (stepfather) is not bound to support the children of his wife by a former husband, in consequence merely of his union with the mother." *Dennysville* v. *Trescott,* 30 Me., 470; *Parsonsfield* v. *Kennebunkport,* 4 Me., 47.

There are cases in this State in which the decisions had the effect of making the settlement of the stepfather the same as that of the stepchild. Analysis of these decisions shows that in each case the father of the child had no pauper settlement in the State, and under the statute then existing the child took the settlement of the mother. When the mother remarried, after death or divorce of the husband, the settlement of the child changed with that of the mother. *St. George* v. *Rockland,* 89 Me., 43, 35 A., 1033; *Albany* v. *Norway,* 107 Me., 174, 77 A., 713.

"It is only when the father has no settlement in this state, that the children follow the settlement of the mother, and if she marries a second time, her newly acquired settlement then becomes

theirs also." *Thomaston* v. *Greenbush*, 106 Me., 242, 76 A., 690, 691.

Generally speaking, however, the pauper settlement of minor children remained that of their father, even after his death. So, too, it was decided in *Farmington* v. *Jay*, 18 Me., 378, that a child born posthumously takes the settlement of his deceased father.

The term "stepchildren" is ordinarily defined as the children by a former marriage of either the husband or wife, and in a literal sense might be considered to have application to children of a living father where remarriage of the mother had taken place after divorce. Yet it is the duty of the Court to interpret the statute in accordance with the established principles relating to pauper settlements and consonant therewith, and which at the same time obviates anomalous and absurd situations.

For illustration: If the construction claimed by the defendant town were adopted, and if the mother of the children married, as her second husband, a man who had no settlement in the State, then the children lost any settlement whatsoever, although they had a living father, responsible for their support, whose settlement remained in the defendant town.

Again, under a literal construction, it might even be contended that the children in the actual custody and control of their own father lost their settlement derived from him, because their mother remarried.

"It is a rule of law, that a statute of doubtful import, is to be expounded, not according to the letter, but according to the intention of its makers." *Woodward* v. *Ware*, 37 Me., 563.

As well said in *Smith* v. *Chase*, 71 Me., 164, "The fundamental rule in the construction of statutes is that they are to be construed according to the intention of the legislature. Another is, that all the statutes on one subject are to be viewed as one. Such a construction must prevail as will form a consistent and harmonious whole, instead of an incongruous, arbitrary and exceptional conglomeration. The context, and the course of legislation, as matter of history often throw light upon the meaning and application of terms used in the statutes."

To the same effect are *Porter* v. *Whitney*, 1 Me., 306; *Pierce* v. *Bangor*, 105 Me., 413, 74 A., 1039.

Restricting the meaning and interpretation of the word "step-children" to the class who have lost their father by death and whose place is filled by a stepfather, gives to the statute a rational and reasonable interpretation, conformable to well-established principles of pauper law and at the same time relieves ambiguity and dispels doubt. The Court is of opinion that the intent of the Legislature is thus correctly interpreted.

Under the terms of the report, the mandate will be

*Judgment for the plaintiff for $624.81, with interest from date of writ.*