CITY OF AUGUSTA

*vs.*

INHABITANTS OF THE TOWN OF MEXICO.

Kennebec.    Opinion, August 22, 1944.

*George H. Hunt,* for the plaintiff.

*Fred E. Hanscom,* for the defendant.

SITTING:   STURGIS, C. J., THAXTER, HUDSON, MANSER, MUR-
CHIE, CHAPMAN, JJ.

HUDSON, J.   This pauper case is reported upon an agreed
statement of facts. The principal question is whether the
pauper settlement of an illegitimate child derived at birth
from its mother follows and changes with her subsequent
pauper settlements. Herein there was neither emancipation
nor acquisition by the child of a new pauper settlement in
its own right.

R. S. 1930, Chap. 33, Sec. 1, Par. III, provided that "Il-
legitimate children have the settlement of their mother, *at
the time of their birth . . .* " (Italics ours.)   But this
statute was amended by P. L. 1933, Chap. 203, Sec. 3, to
read as follows:   "Illegitimate children have the settlement
of their mother. . . ." Prior to this amendment it is conceded
that an illegitimate child took the pauper settlement of its
mother at birth, and that that settlement remained until it
gained one in its own right, even though the mother sub-
sequently acquired another. *Hallowell* v. *Augusta,* 52 Me.,
216, 219; *Houlton* v. *Lubec,* 35 Me., 411, 413; and *Biddeford*
v. *Saco,* 7 Me., 270, 272.

In the case at bar, the mother's pauper settlement at the

time of the birth of the child, the pauper, was in Augusta, and consequently it took its settlement in that city. Subsequently the mother married one not the child's father, whose pauper settlement, when the supplies were furnished in 1939 and 1940, was in the town of Mexico, which then, by reason of the marriage, became the settlement of the mother. The claim of the plaintiff is that under the law as amended the child's settlement followed that of its mother and so was in Mexico. The defendants, however, insist that in spite of the amendment it remained in Augusta, the mother's settlement at the time of the child's birth.

Thus we must decide whether the amendment of 1933 changed the existing law. We seek the intention of the legislature, for that is fundamental in the construction of statutes. *Guilford* v. *Monson,* 134 Me., 261, 265, 185 A., 517.

The only change in the reading of the statute when amended was the deletion of the words "at the time of their birth." It is said that this was simply a striking of surplusage without change of meaning. We do not think so. Before the amendment the pauper settlement taken by the child was only that of the mother at the time of birth. The statute fixed the time and place when and where it was taken and as taken it remained. The effect of omitting the words "at the time of their birth" was to remove the specific time when and place where the child first took its settlement and leave it so that it had the settlement of the mother at any and all times prior to its emancipation or acquisition of a settlement in its own right.

Thus by the amendment was established in this regard the same law for the illegitimate child with relation to the mother's pauper settlement that obtained for a legitimate child with relation to its father's settlement. As a legitimate child follows its father's pauper settlement, so under the amendment an illegitimate child would follow its mother's settlement. Giving the illegitimate child the pauper settle-

ment of the mother not only at birth but later when and if changed would tend to prevent their separation when being relieved from distress and preserve intactness of the family. To prevent such separation and to accord the illegitimate child the same privilege that the legitimate had we think was the reason for the amendment.

Furthermore, it "recognizes the underlying principle that settlement of children should follow that of the parent who was responsible for their support." *Guilford* v. *Monson*, supra, on page 264. Following the marriage of this pauper's mother, the mother still had the duty to support her illegitimate child.

Omission of words in an amending statute appearing in the amended statute raises an inference that a change in the law was intended. *Guilford & Sangerville Water District* v. *Sangerville Water Supply Co., et als.*, 130 Me., 217, 222, 154 A., 567, and cases therein cited. Also see *Opinions of Justices*, 46 Me., on page 578. The Court must not assume that such omission was accidental and then by construction insert what may have been omitted by design. *Union Ins. Co.* v. *Greenleaf*, 64 Me., 123, 129. It belongs to the legislature to supply an accidental omission. *Kelton* v. *Hill*, 59 Me., 259, 261. We regard the omission of these words in the instant case intentional and for the purpose of changing the law for the benefit of illegitimate children, as above indicated.

Chap. 33, Sec. 3, R. S. 1930, as amended by Chap. 113, P. L. 1937, reads in part as follows:

"Settlements acquired under existing laws, remain until new ones are acquired or until lost under the provisions of this section. Former settlements are defeated by the acquisition of new ones."

The defendants contend that the pauper herein never *acquired a settlement in its own right* and consequently that

the settlement it derived from its mother at birth remained, although the mother's settlement changed.

But a settlement may be *acquired* derivatively as well as otherwise. The defendants construe the words "remain until new ones are acquired" as not embracing a settlement acquired by derivation. The statute does not so state. If that construction were accepted, then a legitimate child of a father having a derived pauper settlement in the state would continue to retain its settlement as taken at birth and not follow its father's settlement subsequently acquired by derivation. Such is not the law.

In the instant case there was no new settlement gained by the pauper itself as distinguished from a derivative settlement. We are dealing only with two claimed derived settlements, the one at birth from its mother and the other derived later from its mother upon its mother's marriage. It is not a question of loss of the first derived settlement by reason of a later one acquired by the pauper in its own right, but whether the second alleged derived pauper settlement in the defendant town defeated the first derived settlement in the plaintiff town.

In *Inhabitants of Albany* v. *Inhabitants of Norway,* 107 Me., 174, 77 A., 713, the child pauper, a minor, was born in the plaintiff town. Its parents were divorced, and custody was decreed to the mother. At that time neither parent had a pauper settlement in this state, and the father did not subsequently acquire one. Following the divorce, the mother married again, and her second husband had a pauper settlement in the defendant town. They too were divorced and afterwards the mother, during the minority of the child, married her third husband, whose pauper settlement was in the plaintiff town. The pauper was a minor at the time the supplies were furnished and had not gained a settlement in its own right. The Court held that in spite of the statute now appearing in Chap. 33, Sec. 3, R. S. 1930, as amended, relied

upon by the defendants herein, the first derived settlement by the child from its mother followed the subsequently derived settlements of the mother, and so gave judgment for the defendants.

We hold that an illegitimate child when born not only has the then pauper settlement of the mother but, since the amendment of 1933, takes newly derived settlements of the mother as they come into existence until the child acquires another in its own right.

The defendants also contend that the amendment in 1933 had only prospective operation and so did not alter the status of settlements already existing at the time of its passage. But "Such is not the law." *Inhabitants of the Town of Mercer* v. *Inhabitants of the Town of Anson*, 140 Me., 214, 36 A. (2d), 255; *Inhabitants of the City of Hallowell* v. *Inhabitants of the City of Portland*, 139, Me., 35, 26 A., (2d), 652.

In accordance with the stipulation, liability of the defendants having been established, this case is remanded to the Court below for entry of judgment for plaintiff in the amount of $152.46 and costs.

*So ordered.*

### DISSENTING OPINION.

MURCHIE, J. I am unable to persuade myself, notwithstanding a real effort to do so induced by the fact that my associates are unanimous in the view, that the Legislature intended P. L. 1933, Chap. 203, the third section of which is construed by them without reference to other changes made by the Act in our pauper law, to provide that an illegitimate child should follow a settlement of its mother derived by her through marriage. In my view the intention, as part of a general policy that the settlement of every member of a family should follow the family head, was that an illegiti-

mate child should follow its unmarried mother. The marriage of a mother does not make her illegitimate child a member of the family of the husband.

The majority opinion is grounded in the established principles that legislative intention governs the construction of statutes and that deletion of words shows intent to change existing law; but it ignores the principles that intention should be sought by construing enactments as entireties, *Smith* v. *Chase*, 71 Me., 164; *Berry* v. *Clary et al.*, 77 Me., 482, 1 A., 360; *State* v. *Frederickson*, 101 Me., 37, 63 A., 535, 6 L. R. A. N. S. 186; *Inhabitants of Guilford* v. *Inhabitants of Monson*, 134 Me., 261, 185 A., 517,. "taking all sections . . . and construing them together", *Comstock's Case*, 129 Me., 467, 152 A., 618, and that our "pauper statute is one body of law", *Inhabitants of Friendship* v. *Inhabitants of Bristol*, 132 Me., 285, 170 A., 496.

The opinion declares that the purposes of the amendment of R. S. 1930, Chap. 33, Sec 1, Par. III, were to "preserve intactness" for a family comprising a husband, wife and illegitimate child and "accord the illegitimate child the same privilege" as the legitimate, and supports the construction declared as recognizing "the underlying principle that settlement of children should follow that of the parent who was responsible for their support", citing the *Guilford* case, supra.

This underlying principle dictated no legislation in this State for more than a century prior to the enactment of P. L. 1929, Chap. 191, wherein earlier language giving legitimate children the settlement of the father if he had one in the State was qualified restrictively to exclude a child given into the custody of its mother by divorce decree. It was applied restrictively in the *Guilford* case to exclude the child of a living father divorced from his wife from that direct stepfather control established by P. L. 1933, Chap. 203, Sec. 2, and abandoned by P. L. 1935, Chap. 186. It is used by the majority of the Court to enlarge rather than restrict a field

defined by legislation in something less than clear and unambiguous terms.

Our pauper law from 1821 to 1933 provided that the settlement of a wife and a legitimate child should follow the husband and father only if he had one in the State, although he was responsible for the support of both regardless of his settlement. By judicial construction, it gave a legitimate child by derivation any settlement which its widowed mother derived from its stepfather, *Inhabitants of Parsonsfield* v. *Inhabitants of Kennebunkport*, 4 Me., 47, although the marriage imposed no liability on that stepfather for its support, *Inhabitants of Dennysville* v. *Inhabitants of Trescott*, 30 Me., 470. From 1857 to 1933 it made the settlement of an illegitimate child unchangeable from birth to majority or emancipation, although the mother responsible for its support might change her own.

Prior to the enactment of P. L. 1933, Chap. 203, a municipality might have been holden for the support of a wife and the legitimate child of her husband, although not for that of the husband and father. It was bound to provide for the support of a wife and stepchild having no living father, although the stepfather whose settlement imposed the liability did not stand in *loco parentis* to the child. It was not obligated for the support of an illegitimate child although the mother responsible therefor might have had a settlement within its borders for many years acquired either directly or by derivation from a husband.

P. L. 1933, Chap. 203, Secs. 1 and 2 changed R. S. 1930, Chap. 33, Sec. 1. Pars, I and II, so as to vest complete direct control of the settlement of wife, legitimate child and stepchild having no living father in the husband, father and stepfather. Sec. 1 deprived a married woman of the capacity to have any settlement except by derivation from a husband. Sec. 2 deprived her of the capacity to control the settlement of her legitimate child and terminated that double deriva-

tion which had previously operated to give the stepchild the settlement of its stepfather through her. Sec. 3 changed R. S. 1930, Chap. 33, Sec 1, Par. III so as to make the settlement of an illegitimate child changeable and vest direct control thereof in the unmarried mother. That this control was not intended to be so complete as to have the child follow a derived settlement seems apparent in the language of Sec. 1 which draws a distinction between a married woman and a "woman over 21 years of age, having no husband."

Section 1 purports to give capacity to the latter to acquire a settlement of her own, although she possessed it before passage of the Act. See R. S. 1930, Chap. 33, Sec. 1, Par. VI. Recital to that effect, declaratory of existing law, in an act giving the head of a family comprising a husband, his wife and a stepchild having no living father complete direct control over the settlement of himself, his wife and stepchild, convinces me that the amendment of R. S. 1930, Chap. 33, Sec. 1, Par. III, contained in P. L. 1933, Chap. 203, Sec. 3, was intended only to give an unmarried mother who was the head of a family and over 21 years of age corresponding control over the settlement of herself and her illegitimate child.

In the *Guilford* case, supra, on which the majority opinion depends for its assertion of an underlying principle, it is expressly stated that construction should conform to established principles of law and obviate "anomalous and absurd situations." These are the very reasons which impel me to record my dissent for it was our law prior to 1933 that one marrying the mother of an illegitimate child was not obligated for its support and that the burden thereof did not fall on the town wherein the husband had his settlement. Neither of these principles has been changed by clear and unequivocal language. To me construing one section of a legislative act to change well-established law by giving an illegitimate child a pauper settlement through that

very system of double derivation which another section abolishes for a legitimate child who might be its half-brother is anomalous and absurd, and presents concurrent amendments to our pauper law as "an incongruous, arbitrary and exceptional conglomeration" when they might be made "a consistent and harmonious whole" by limiting the application of the amended R. S. 1930, Chap. 33, Sec. 1, Par. III, to the illegitimate children of that "woman over 21 years of age, having no husband" who is indentified in section 1 as one of the persons to whom the legislation as a whole was especially intended to relate. The *Smith* and *Guilford* cases supra, carry declaration that consistency and not conglomeration should be the objective of all statutory construction.

The Legislature which enacted P. L. 1933, Chap. 203 appointed a recess committee to study our pauper laws. Its report to the succeeding Legislature is found in Legislative Document No. 622 of the 87th Legislature. It seems fair to assume that the abandoment of stepfather control over the settlement of legitimate children, carried by P. L. 1935, Chap. 186, was intended to continue the attempt made in 1933 to provide a uniform and readily applicable basis for determining the settlements of paupers by eliminating from the control of the head of a famly all the members except a wife and his own children. If this was the intention in 1935, it is apparent that the members of the 87th Legislature did not construe the 1933 law, in the enactment of which many of its members participated, as it is now interpreted by the Court majority.