THE INHABITANTS OF THE TOWN OF HARTLAND

*vs.*

THE INHABITANTS OF THE TOWN OF ATHENS

Somerset.   Opinion, July 1, 1953.

*John B. Furbush,* for plaintiff.

*Clayton E. Eames,* for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, NULTY, WILLIAMSON, TIRRELL, JJ.

WILLIAMSON, J.   On report upon an agreed statement. This is an action to recover for pauper supplies furnished in 1949-50 to Wallace Wentworth, his wife and minor children,

then living in the plaintiff town. If the settlement of Wallace Wentworth was in the defendant town of Athens judgment is to be entered for the plaintiff in the amount of $124.58; otherwise for the defendant.

The decision rests upon the meaning of the last sentence of R. S., Chap. 82, Sec. 3, which reads:

"The settlement status of a person in the military or naval service of the United States or of a person who is an inmate of any asylum, penitentiary, jail, reformatory, or other state institution shall not change during such period of service, confinement, or imprisonment, but his settlement shall remain as it was at the time of the beginning of such service, confinement, or imprisonment."

Wallace Wentworth was a member of the armed services of the United States from January 1943 to January 1946. He became twenty-one years of age with capacity to acquire a settlement in June 1945. When he entered service the settlement of his father and of himself, an unemancipated minor, by derivation from his father was in Athens. Subsequently and before he became twenty-one his father lost his settlement in Athens without acquiring another settlement elsewhere in the state. The settlement of Wallace on his coming of age has remained unchanged. Apart from section 3, *supra*, he would have lost his settlement in Athens during his minority along with his father under R. S., Chap. 82, Sec. 1, Par. II, reading in part:

"Legitimate children have the settlement of their father, if he has any in the state; if he has not, they shall be deemed to have no settlement in the state. Children shall not have the settlement of their father acquired after they become of age and have capacity to acquire one."

Where then was the settlement of Wallace on reaching twenty-one? Under section 3, was it "frozen" in Athens during his military or naval service? Under Section 1, Par.

II, did he lose his settlement in Athens along with his father? The words of section 3 are plain and clear "The settlement status—shall not change during such period of service—but his settlement shall remain as it was at the time of the beginning of such service—." Wherein is there room in these phrases to differentiate between change of settlement by an adult of capacity to acquire a new settlement for himself, and by a minor whose settlement is derivative, as here for example, from his father?

The defendant's argument is summed up in a question in its brief: "How could it (the last sentence of section 3) refer to the settlement of an unemancipated minor when he has none?" In other words, the defendant says that an unemancipated minor has no pauper settlement of his own and therefore section 3 is not applicable, and section 1, paragraph II, operates in full force.

The error of the reasoning lies in the failure to note that a child has a settlement within the state—or none as the case may be—as does an adult. The difference between the case of the child and the adult lies in the manner of acquisition or loss of settlement and not in the nature of a settlement itself. Compare paragraphs II and III of section 1 of R. S., Chap. 82, relating to children both legitimate and illegitimate, with paragraph VI relating to the length of residence necessary for acquisition of a settlement by a "person of age." We are here interested in the *where* and not in the *what* of settlement.

There can be no question of the power to control the settlement of a child. The Legislature in matters of pauper settlements is "limited in its power only by its own perception of what is proper and expedient." *Lewiston* v. *North Yarmouth,* 5 Me. 66; *Hallowell* v. *Portland,* 139 Me. 35, 26 A. (2nd) 652; *Mercer* v. *Anson,* 140 Me. 214, 36 A. (2nd) 255. See also 70 C. J. S. 57 et seq. and 72, "Paupers," Sec. 32 et seq. and Sec. 37; 41 Am. Jur. 700, "Poor and Poor Laws," Sec. 26.

There is nothing unusual in a provision against change of a minor's settlement by derivation. Prior to 1933 an illegitimate child took the settlement of his mother at birth and there it remained until the child acquired a new settlement in his own right, although his mother in the meantime acquired another. *Augusta* v. *Mexico*, 141 Me. 48, 38 A. (2nd) 822. Since 1933 the settlement of such a child has followed that of his mother. There is the example of the emancipated minor whose settlement no longer to be changed by derivation remains fixed until having capacity so to do he acquires another. *Lowell* v. *Newport*, 66 Me. 78.

The history of the last sentence of section 3 is brief and reveals nothing to alter the plain meaning of the language used. It was first enacted in the Laws of 1931, Chap. 124, as an addition to R. S., 1930, Chap. 33, Sec. 3. In the Laws of 1937, Chap. 113, it was amended to read as follows:

> "A person in the military or naval service of the United States shall be deemed to **have a settlement in** be a resident of the town in which he was a resident **had a settlement** at the time of his enlistment or induction."

The words emphasized replaced the words crossed out which were in the 1931 Act.

In 1939 the sentence in its present form was enacted for the purpose of making a uniform rule governing the settlements of certain classes of persons. *Laws of 1939, Chap. 45.* The statute which in 1931 controlled only those in military and naval service was now enlarged in scope to include inmates of institutions as well. The common problem was the effect of the absence of such persons from home upon their pauper settlements.

In enacting the 1931 and 1937 laws relating to the armed services the Legislature dealt with a class of which a large part would ordinarily at all times be minors. Had it wished to differentiate between the minor who acquired his settle-

ment by derivation and an adult with capacity to acquire a settlement for himself, it could readily have so stated in express terms.

No change was made in the more inclusive 1939 law. The Legislature then chose, and with a purpose we believe, to speak of "the settlement status of a person" in section 3, and not of persons of age, or of minors, or of children, as in several paragraphs of section 1 from which we have quoted in part above relating to the acquisition of settlements. In section 3 "person," in our view, includes both minor and adult, and the settlement of each is affected thereby.

It is of interest to note that the last sentence of section 3, *supra*, in its development since 1931 has substantially altered existing law; for example, our court had held that time spent in military service or in prison did not interrupt the five years continuous residence necessary for change of settlement. *Brewer* v. *Linnaeus*, 36 Me. 428 (1853) (military service) ; *Topsham* v. *Lewiston*, 74 Me. 236 (1882) (imprisonment in Maine) ; *Bangor* v. *Frankfort*, 85 Me. 126, 26 A. 1088 (1892) (imprisonment in Massachusetts). In the case of the inmate of an insane hospital see *Pittsfield* v. *Detroit*, 53 Me. 442 (1866), and particularly *Bangor* v. *Wiscasset*, 71 Me. 535 (1880).

The words of the statute, as we earlier stated, are in our view plain and clear. We can find no sound reason why the Legislature did not mean precisely what it said.

We conclude therefore that the loss of his father's settlement in Athens did not affect that of Wallace. His settlement was in Athens when he entered service and there it remained. The entry will be

*Judgment for plaintiff in the amount of $124.58.*