MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2025 ME 55
Docket:      Cum-23-124
Argued:      February 8, 2024
Decided:     June 26, 2025

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ., and
             HJELM, A.R.J.*
Majority:    MEAD, HORTON, CONNORS, and LAWRENCE, JJ., and HJELM, A.R.J.
Dissent:     DOUGLAS, J., and STANFILL, C.J.


ANGELA M. SMITH et al.,
PERSONAL REPRESENTATIVES OF THE ESTATE OF PETER A. SMITH

v.

JOHN R. HENSON et al.


HJELM, A.R.J.

[¶1] In this appeal raising a single issue of statutory construction, we are called upon to determine whether a former iteration of Maine's Wrongful Death Act permitted recovery for "pecuniary injuries" even when the decedent, had he lived, would not have provided financial support to any of the people for whose benefit the action was brought.  *See* 18-A M.R.S. § 2-804(b) (2017).[1]

---

\* Although not present at oral argument, Active Retired Justice Hjelm participated in this appeal. *See* M.R. App. P. 12(a)(2).

[1] This statute and the others that we cite in this opinion have since been recodified as part of Title 18-C.  *See* P.L. 2017, ch. 402; P.L. 2019, ch. 417, § B-14 (effective Sept. 1, 2019).  This section has also been amended since the original recodifying act was passed.  *See* P.L. 2019, ch. 417, § A-3 (effective Sept. 1, 2019); P.L. 2023, ch. 390, § 3 (effective Oct. 25, 2023) (codified at 18-C M.R.S. § 2-807 (2025)).

2

When the parties litigated the issue in this action for medical negligence, the Superior Court (Cumberland County, *O'Neil, J.*) concluded that the statute allowed for such recovery. At the ensuing trial, a jury found the defendants—a physician and two medical entities—liable for failing to properly treat Peter A. Smith, resulting in his death. The damages as determined by the jury included compensation for pecuniary injury to Smith's parents, Angela M. Smith and Richard T. Smith Jr., who were the plaintiffs as co-personal representatives of his estate, even though there was no evidence of any expectation that their son would have provided financial support to them. The court entered a judgment that included an award of damages for pecuniary injuries based on the jury verdict.

[¶2] On this appeal by defendants John R. Henson, Mercy Hospital, and Eastern Maine Healthcare Systems, we hold that the applicable wrongful death statute authorized recovery for pecuniary injury only when the death deprived one or more of the people identified in the statute of prospective financial gain and that damages for such a loss therefore were not available when the loss was asserted only by the estate. For that reason, we vacate the sole portion of the judgment challenged on appeal—the portion awarding damages for pecuniary injury.

## I.  BACKGROUND

[¶3]  We begin with a description of the relevant facts and history of the case, drawn from the case's procedural history and the evidence viewed in the light most favorable to the Smiths as the prevailing parties.  *See Est. of Gagnon v. Anthony*, 2015 ME 142, ¶ 6, 126 A.3d 1142.

[¶4]  Two times, in June of 2017, Peter A. Smith went to Mercy Hospital in Portland because he was suffering from a variety of symptoms, including fever, joint aches, and a skin rash.  At each visit, he was seen by the same physician, John R. Henson, M.D.  Although Smith's symptoms pointed strongly toward Lyme disease, on each visit Henson diagnosed a different condition and consequently did not provide the medical treatment, which would have included antibiotics, that would have addressed Smith's actual condition. Smith's ailment was later diagnosed correctly as Lyme disease, but as a result of Henson's misdiagnosis and the resulting delay in treatment, Smith developed Lyme carditis, which is caused when bacteria associated with Lyme disease damage the heart muscle and create cardiac inflammation and scarring, resulting in electrical instability.  Smith's untreated Lyme disease and the consequent carditis caused his death on July 2, 2017, less than a month after he had first been seen by Henson.

4

[¶5] In 2021, Peter's parents, Angela M. Smith and Richard T. Smith Jr., as co-personal representatives of their son's estate, filed a three-count complaint against Henson, Mercy Hospital, and Eastern Maine Healthcare Systems (collectively, Henson).[2] In the complaint, the Smiths sought recovery pursuant to Maine's wrongful death statute, 18-A M.R.S. § 2-804(b), and the survival-of-actions statute, 18-A M.R.S. § 3-817(a) (2017). Among other categories of damages, the Smiths' complaint alleged a loss of future earnings resulting from their son's death. Henson filed a motion for partial summary judgment on that part of the complaint, asserting that section 2-804(b) did not allow the Smiths to recover for pecuniary loss resulting from their son's death because they would not have received any of his prospective earnings. The court denied Henson's motion. In its written order, the court examined the legislative history leading to the version of section 2-804(b) applicable to the case and concluded, on that basis, that the statute[3] unambiguously allowed a

---

[2] The parties later stipulated that any negligence established as to Henson would also be attributed to Mercy Hospital and Eastern Maine Healthcare as Henson's employers and principals.

[3] Although the legislative history considered by the court related to 18-A M.R.S. § 2-804(b) (2017), the nominal focus of the court's analysis was the wrongful death statute as set out in "18-C M.R.S. § 2-807(2) (2021)." That version of the law did not become effective until September 1, 2019. *See* P.L. 2017, ch. 402, §§ A-1, A-2; P.L. 2019, ch. 417, §§ A-3, B-14. Peter Smith died in July of 2017, however, when the wrongful death statute was 18-A M.R.S. § 2-804(b). The statute governing a wrongful death action is the one in effect at the time of the death. *Hammond v. Lewiston, Augusta & Waterville St. Ry.*, 106 Me. 209, 212-13, 76 A. 672, 673 (1909). Therefore, the controlling statute in this case is found in Title 18-A, not Title 18-C. Nonetheless, that the court examined the superseding statute is inconsequential because the official comment to section 2-807 explained that the

wrongful death plaintiff to obtain judgment for pecuniary injury even when that loss was asserted only by the decedent's estate and the beneficiaries of the judgment did not suffer any actual loss themselves.[4]

[¶6]  The case proceeded to a seven-day jury trial in early 2023.  The jury was presented with evidence that, at the time of his death, Smith was a twenty-five-year-old employee of a major international accounting firm and was working toward becoming a certified public accountant.  During the trial, there was no evidence that Smith would have provided financial support or assistance to his parents, who were the only people for whose benefit the action was brought—and in fact, Angela Smith testified explicitly that neither she nor her husband had any expectation that their son would have supported either of them financially, but rather she understood he had hoped to have a large family and devote his financial resources to them.

---

recodification "does not constitute a substantive change to Maine law on wrongful death claims." 18-C M.R.S.A. § 2-807 Me. cmt. – 2019 (2020); *see* P.L. 2017, ch. 402, § G-1 (authorizing the "Probate and Trust Law Advisory Commission, in consultation with the Family Law Advisory Commission and other interested parties, [to] compose Maine Uniform Probate Code Comments that explain and aid in the interpretation of the Maine Uniform Probate Code as enacted by this Act").  Thus, despite some changes in the language to section 2-807 from the earlier version and a redesignation of the title and section, the identity in substance between the relevant elements of the two statutes means that, in the end, the court's discussion of section 2-807 also was applicable to the statute actually at issue, 18-A M.R.S. § 2-804(b).

[4] In addition to having sought partial summary judgment on the issue, at all appropriate points during the trial as well as in post-trial motion practice Henson preserved his contention that any claim for pecuniary injury asserted by the Smiths was not authorized by the wrongful death statute.

6

[¶7] The court's instructions to the jury, consistent with its earlier ruling, permitted the jury to consider an award for pecuniary injuries. The jury returned a verdict finding that Henson was negligent in his treatment of Smith. Among the resulting damages found by the jury was $2 million for Smith's loss of future earnings.[5] Pursuant to the verdict, the court entered a judgment that included those damages.[6]

[¶8] Here, Henson appeals only from the portion of the judgment entitling the Estate to recover for the pecuniary loss based on Peter Smith's future prospective earnings.[7] Henson does not challenge the determination that he was liable for Smith's death or the other damages found by the jury and awarded by the court in the judgment.[8]

---

[5] Two economists testified at trial, one called by the Smiths and the other by Henson. Their opinions presented the jury with a range for the present value of lost net future earnings, of $1.4 million to $3.3 million, so the jury's determination of the amount of pecuniary injury was within the bounds of the evidence admitted by the court.

[6] Predicated on the jury verdict, the judgment also includes compensation for the loss of comfort, companionship, and society sustained by Smith's parents, *see* 18-A M.R.S. § 2-804(b), and for Smith's own conscious pain and suffering, *see id.* § 2-804(c). Because the jury's determination of consortium damages exceeded the amount allowed by statute, the court reduced those damages to the statutory maximum.

[7] An amicus brief aligned with Henson's contentions has been submitted jointly by the Maine Medical Association, the Maine Hospital Association, the Maine Osteopathic Association, and the Maine Association of Insurance Companies. An amicus brief in support of the Smiths' position has been filed by the Maine Trial Lawyers Association.

[8] Henson has satisfied the portion of the judgment, including statutory interest, that is not challenged in this appeal.

## II. DISCUSSION

[¶9]  At the time relevant to this case, 18-A M.R.S. § 2-804(b) read, in full,

as follows:

>    Every wrongful death action must be brought by and in the name of the personal representative of the deceased person.  The amount recovered in every wrongful death action, except as otherwise provided, is for the exclusive benefit of the surviving spouse if no minor children, of the children if no surviving spouse, one-half for the exclusive benefit of the surviving spouse and one-half for the exclusive benefit of the minor children to be divided equally among them if there are both surviving spouse and minor children and to the deceased's heirs to be distributed as provided in [18-A M.R.S. §] 2-106 [(2017)] if there is neither surviving spouse nor minor children.  *The jury may give damages as it determines a fair and just compensation with reference to the pecuniary injuries resulting from the death and in addition shall give such damages that will compensate the estate of the deceased person for reasonable expenses of medical, surgical and hospital care and treatment and for reasonable funeral expenses.*  In addition, the jury may give damages not exceeding $500,000 for the loss of comfort, society and companionship of the deceased, including any damages for emotional distress arising from the same facts as those constituting the underlying claim, to the persons for whose benefit the action is brought.  The jury may also give punitive damages not exceeding $250,000.  An action under this section must be commenced within 2 years after the decedent's death, except that if the decedent's death is caused by a homicide, the action may be commenced within 6 years of the date the personal representative of the decedent discovers that there is a just cause of action against the person who caused the homicide.  If a claim under this section is settled without an action having been commenced, the amount paid in settlement must be distributed as provided in this subsection.  A settlement on behalf of minor children is not valid unless approved by the court, as provided in Title 14, section 1605.

8

(Emphasis added.)  It is the italicized sentence that is central to this case.

[¶10]   The questions presented here are these: Are damages for a pecuniary loss occasioned by a wrongful death—in other words, the loss of future net financial gain that the decedent would have produced—recoverable only if any of the people for whose benefit the action is brought, namely, the people listed in the second sentence of the statute, have suffered that loss?  Or are compensatory damages for pecuniary injuries also recoverable if, as here, that loss is asserted by the estate itself?

[¶11]   We start our analysis with familiar principles of statutory construction.

[¶12]  Interpreting a statute is a matter of law, conducted de novo and without deference to the trial court.  *See Kinderhaus North LLC v. Nicolas*, 2024 ME 34, ¶ 36, 314 A.3d 300; *Francis v. Dana-Cummings*, 2005 ME 36, ¶ 3, 868 A.2d 196.  In construing and then applying a statute, our ultimate goal is to give effect to the Legislature's intent.  *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621.  We first examine the statute itself to determine if it is ambiguous—in other words, whether it is reasonably susceptible to more than one meaning.  *Wuori v. Otis*, 2020 ME 27, ¶ 7, 226 A.3d 771.  We do that by looking at the plain meaning of the words used by the Legislature, *id.* ¶ 6, and

by giving "due weight to [the] design, structure, and purpose [of the statute] as well as to aggregate language," *Dickau*, 2014 ME 158, ¶ 22, 107 A.3d 621 (quotation marks omitted). If the statute gives rise to only one reasonable interpretation and is therefore unambiguous, that is the end of the exercise; the statute speaks for itself. *See Wuori*, 2020 ME 27, ¶¶ 6-7, 226 A.3d 771. Only if the statutory language is unclear or can reasonably be assigned multiple meanings will we look to secondary or other extrinsic indicia of the Legislature's intent, such as statutory history and the policy underlying the statute.[9] *Id*. ¶ 7; *Fuhrmann v. Staples the Off. Superstore E., Inc.*, 2012 ME 135, ¶ 23, 58 A.3d 1083. Finally, to the extent that a statute may work in derogation of common law, we will construe the statute strictly and will not extend it by implication. *Churchill v. S.A.D. No. 49 Tchrs. Ass'n*, 380 A.2d 186, 192 (Me. 1977).

[¶13] The parties disagree on whether section 2-804(b) was ambiguous. The Smiths contend that the statute unambiguously allowed the Estate to recover for their son's lost net future earnings and that the resulting recovery

---

[9] In its order on summary judgment, the court concluded that the wrongful death statute unambiguously allowed recovery for pecuniary injuries suffered only by the decedent's estate, but the court reached that conclusion after considering the statute's legislative history. This analytical approach was erroneous for the reason set out in the text—legislative history is a proper source of interpretive information only if the statute is ambiguous in the first place. *Wuori v. Otis*, 2020 ME 27, ¶¶ 6-7, 226 A.3d 771. Legislative history and other extrinsic sources cannot be used to transform an ambiguous statute into an unambiguous one. But because our review is de novo, we construe the statute directly, without regard to the trial court's reasoning. *See supra* ¶ 12.

would then be distributed among the statutorily designated beneficiaries. In contrast, Henson asserts that the statute's meaning was unclear but that, in the end, it did not allow for the Estate itself to recover for pecuniary injuries. Accordingly, we first consider whether, based on a plain-meaning, four-corners analysis, the portion of section 2-804(b) at issue here was ambiguous. Then, because we conclude that the statute was unclear, we seek to resolve the ambiguity by examining both the history of the statute itself and broader principles that bear on how the statute is properly construed.

## A.     Ambiguity of Section 2-804(b)

[¶14]  As set forth above, the issue presented here is whether section 2-804(b) allowed recovery of compensatory damages for pecuniary injuries asserted only by the decedent's estate, when no person for whose benefit the action may be brought pursuant to the statute will suffer such a loss.

[¶15]  Section 2-804(b) identified specific categories of compensatory damages that could be awarded in a wrongful death action. In the order listed within the statute, those categories comprised damages for (1) "pecuniary injuries resulting from the death," (2) "reasonable expenses of medical, surgical and hospital care and treatment," (3) "reasonable funeral expenses," and (4) "the loss of comfort, society and companionship of the deceased, including

any damages for emotional distress." 18-A M.R.S. § 2-804(b). The statute also established a default for who is entitled to seek those damages: as set out in the statute's second sentence, that right was granted only to those who are specifically identified in the statute based on their relationship to the decedent—but the list was subject to the caveat, "except as otherwise provided." *Id.* Therefore, unless the statute created a specific exception that created a right of recovery in some other person or entity, only the persons listed as beneficiaries in the second sentence of section 2-804(b) could seek and obtain recovery for injuries sustained as a result of the decedent's death.[10] Importantly here, the decedent's estate was *not* included in the default group of those who could assert a claim for and recover wrongful death damages. *Id.* This means that an estate could recover for pecuniary injuries only if some other provision of the statute established that right.

---

[10] We recognize that this aspect of section 2-804(b) created a textual redundancy, which generally we seek to avoid if we can do so reasonably. *See Howard v. White*, 2024 ME 9, ¶ 11, 308 A.3d 213. Construing section 2-804(b) reasonably, the redundancy was warranted and did not create surplusage because of the inclusion of the sentence between the second sentence of the statute, which described who received the "exclusive benefit" of wrongful death damages, and the fourth sentence, which allowed for consortium-type damages to be awarded to "the persons for whose benefit the action is brought," namely, the default claimants already described in the second sentence. *See supra* ¶ 9 (quoting section 2-804(b)). Because the sentence we construe today fell between the second and fourth sentences and specified in its final clause that the *estate* may recover damages for medical-related and funeral expenses, in the fourth sentence it became arguably necessary to refer, again, to the "persons for whose benefit the action is brought." 18-A M.R.S. § 2-804(b).

12

[¶16]  That is where the sentence italicized in paragraph 9 above comes in:

> The jury may give damages as it determines a fair and just compensation with reference to the pecuniary injuries resulting from the death and in addition shall give such damages that will compensate the estate of the deceased person for reasonable expenses of medical, surgical and hospital care and treatment and for reasonable funeral expenses.

18-A M.R.S. § 2-804(b).

[¶17]  This single sentence created three of the four categories of recoverable compensatory damages: compensation for "pecuniary injuries"; for medical, surgical, and hospital care and treatment; and for reasonable funeral expenses.  *Id.*  The second clause of the sentence clearly and explicitly established the decedent's estate as the proper recipient of the second and third of those forms of damages.  *Id.*  In contrast, this sentence did not directly designate an estate as the recipient of an award of damages for pecuniary injuries, referenced in the sentence's first clause.  *Id.*  Indeed, there is *no* specific identification of who may recover compensation for pecuniary injuries.  *Id.*  Because of the default language in the statute's second sentence, an estate could recover for pecuniary injuries only if the reference to the estate in the second clause also modified the first clause, where a right to recover those damages was created.

[¶18]  Those two clauses of the sentence were connected by the phrase "and in addition." *Id.*  The pertinent question here is the effect of that phrase—whether, as Henson asserts, it signified that there were two separate concepts so that words in the second part of the sentence could not modify anything in the first part, or instead whether, as the Smiths contend, the phrase merely created several categories of damages while still allowing the second clause's reference to the estate to relate back to the first part of the sentence pertaining to a claim for pecuniary injuries.  The statute itself does not make clear which of those two constructions—one that would allow the estate to recover for pecuniary injuries, and the other that would not—is the correct one.[11]  *See id.*

[¶19]  Compounding the ambiguity is the specification in the fourth sentence that "persons for whose benefit the action is brought" may recover consortium damages, including damages for emotional distress.  *Id.*  When seen in conjunction with the second clause of the sentence primarily at issue here, this means that the statute expressly identified who may recover every

---

[11]  There is no comma between the two clauses.  While the *presence* of a comma could suggest that the two phrases are not connected, *see Urrutia v. Interstate Brands Int'l*, 2018 ME 24, ¶ 14, 179 A.3d 312, the *absence* of a comma does not indisputably mean that the two parts of this sentence must unambiguously be united in substance, *see Hayes v. State*, 247 A.2d 101, 102 (Me. 1968) (stating that punctuation is "subordinate to the text and is never allowed to control its plain meaning" (quotation marks omitted)).

category of compensatory damages—except for pecuniary damages, as to which the Legislature remained silent.

[¶20]  All of this demonstrates that, on the face of the statute, either interpretation advocated here is defensible.  Because the statute could reasonably be read in either of these two incompatible ways, its meaning was ambiguous.  *See Me. Ass'n of Health Plans v. Superintendent of Ins.*, 2007 ME 69, ¶ 40, 923 A.2d 918 (stating that the existence of multiple, possibly reasonable interpretations is "the classic definition of ambiguity").  Given the lack of clarity, we must glean the Legislature's intent by turning to relevant and available extrinsic touchstones: the statute's legislative history and principles for construing an ambiguous statute that, as we will explain, deviates from the common law.

**B.    Legislative History**

[¶21] Before 2009, the sentence we are now examining differed because, unlike the version applicable to this case, it specified that damages for pecuniary injuries could be recovered only by "the persons for whose benefit the [wrongful death] action [was] brought," namely, those listed in the second sentence of the statute—a surviving spouse, the decedent's children, etc.—but that list did not include the estate.  18-A M.R.S. § 2-804(b) (2008).  The estate,

however, *was* vested with a claim, but an entirely different one; that pre-2009 sentence went on, as did the statute we construe here, to state that, "and in addition" the estate itself could recover for medical-related and funeral expenses.[12] *Id.*

[¶22]  This makes clear that, before 2009, there had been full conceptual separation between the first and second parts of the sentence both in terms of the nature of recoverable damages and who could recover them.[13]  *Id.*  Only identifiable individuals could recover for pecuniary damages, "and in addition" *the estate* could recover for medical and funeral expenses.  *Id.*  The categories of damages in the two parts of the sentence therefore were distinct and did not overlap, so that the designated recipients of a jury award for damages described in the first part of the sentence were entirely different from the designated

---

[12]  That part of the pre-2009 statute read:

> The jury may give such damages as it determines a fair and just compensation with reference to the pecuniary injuries resulting from the death to the persons for whose benefit the action is brought and in addition shall give such damages as will compensate the estate of the deceased person for reasonable expenses of medical, surgical and hospital care and treatment and for reasonable funeral expenses . . . .

18-A M.R.S. § 2-804(b) (2008).

[13]  The dissent does not appear to dispute that the phrase "and in addition" bifurcates the rights set out in the sentence, though it discounts the phrase's significance.  Dissenting Opinion ¶¶ 44-45. Beyond this, the dissent does not explicitly present a view on whether the statute is ambiguous. Dissenting Opinion ¶ 50.  The disagreement between our view and that of the dissent focuses instead on how best to determine the Legislature's intent based on the interplay among various facets of the statute and relevant tools of statutory construction.

recipients for damages described in the second part of the sentence. *Id.* This means that the Legislature used the phrase "and in addition" as a wall between the two parts of the sentence, creating separate rights of recovery that were not subject to intermingling. *Id.*

[¶23] Then, in 2009, the Legislature amended section 2-804(b), resulting in the law applicable to this case, by eliminating the specification of who would be entitled to damages for pecuniary injuries, so that it then provided no specification at all. *See* P.L. 2009, ch. 180, § 1 (effective Sept. 12, 2009). The 2009 modification of the statute did not, however, touch the connecting phrase, "and in addition." *Id.* From this, we can only conclude that the Legislature did not intend to change the meaning or the disjunctive effect of the phrase "and in addition." Just as the pre-2009 version of section 2-804(b) could not have been reasonably construed to allow the estate to recover for pecuniary injuries because "and in addition" did not allow the two portions of the sentence to be integrated, the retention of the *identical* phrase could not reasonably—in the absence of some express legislative intent—be read to become transformed and given an entirely *opposite* meaning so that it would come to allow such a merger of concepts.

[¶24] Consideration of the legislative path leading to the 2009 amendment reveals no clear intent to change the effect of the sentence. As noted above, the statute had provided that damages for pecuniary injuries could be recovered by "the persons for whose benefit the action is brought." 18-A M.R.S. § 2-804(b) (2008). In 2009, a legislator submitted a proposed amendment to the statute, which would, among other things, delete that phrase and, separately, increase the limit on the amount of punitive damages. L.D. 428, § 1 (124th Legis. 2009). Relatedly, in the same proposal, the sponsoring legislator sought to amend the survival-of-actions statute, 18-A M.R.S. § 3-817(a), to specifically allow for recovery of "claims for pecuniary losses of the deceased that would have been realized but for the death."[14] L.D. 428, § 2 (124th Legis. 2009). As the rationale for these proposed amendments, the legislator explained that the proposed legislation would eliminate "inequitable

---

[14] The legislation would have amended 18-A M.R.S. § 3-817(a) (2008) as follows: "No A personal action or cause of action is not lost by the death of either party, but the same, including claims for pecuniary losses of the deceased that would have been realized but for the death, survives for and against the personal representative of the deceased, except that actions or causes of action for the recovery of penalties and forfeitures of money under penal statutes do not survive the death of the defendant. A personal representative may seek relief from a judgment in an action to which the deceased was a party to the same extent that the deceased might have done so." L.D. 428, § 2 (124th Legis. 2009). Wrongful death actions and rights are not in the category of cases affected by section 3-817(a), however, because wrongful death actions arise from a person's death and benefit designated individuals. *See* 18-A M.R.S. § 2-804(b). Definitionally, those actions therefore are not "lost by the death of [a] party." 18-A M.R.S. § 3-817(a); *see Shaw v. Jendzejec*, 1998 ME 208, ¶ 6, 717 A.2d 367 (explaining that the survival cause of action is "separate and distinct" from a wrongful death action).

18

results" because the law allowed for recovery of significant damages for pecuniary injuries if the decedent were survived by people qualified to recover but not if there were no such survivors. *An Act To Amend the Intestate Succession and Wills Laws Concerning Wrongful Death: Hearing on L.D. 428 Before the J. Standing Comm. on Judiciary*, 124th Legis. (2009) (testimony of Rep. Cynthia Dill).

[¶25] The summary of the Judiciary Committee's revisions to the original bill explicitly stated that the increase in the cap for punitive damages was retained but that the revisions deleted that part of the proposed amendment that would have "specified that claims for pecuniary losses are not lost by the death of either party." The Committee's revisions to the bill, however, made no mention of any intention to authorize an estate to recover for pecuniary injury. Comm. Amend. A to L.D. 428, No. H-212, Summary (124th Legis. 2009). Ultimately, the Legislature passed the portions of the bill that increased the maximum allowable recovery for punitive damages, deleted the reference in the second sentence of section 2-804(b) (2008) to "persons for whose benefit the action is brought," did *not* include a provision that the estate could recover pecuniary damages, and did not pass the proposed amendment to the survival-of-actions statute. *See* P.L. 2009, ch. 180, § 1.

[¶26]  So in the end, although the wrongful death statute no longer explicitly specified that pecuniary injuries could be recovered only by qualified individuals, the Legislature did *not* express any intention, in adopting L.D. 428 as amended by the committee, to provide that the decedent's estate *could* obtain compensation for pecuniary injuries.  *See id.*  Significantly, the Legislature did not explicitly amend *any* statute to expressly vest the decedent's estate with a right to recover for pecuniary loss.  And as we discuss above, the amendments did not change the internal phrase "and in addition," which had the effect of precluding an estate from recovering damages for pecuniary injuries.  18-A M.R.S. § 2-804(b).  Further, the Legislature did not modify the default list to include the decedent's estate among those entitled to recover wrongful death damages.  Given these mixed signals, the 2009 amendments transformed section 2-804(b) from a statute that was at least arguably unambiguous to one—the version we address here—that was unclear.

[¶27]  In effect, the Smiths argue that the 2009 amendment was addition-by-subtraction—that eliminating the phase "to the persons for whose benefit the action is brought" from the first clause had the positive effect of affirmatively vesting the estate with the right of recovery for pecuniary injuries.  P.L. 2009, ch. 180, § 1.  Particularly given the substantive effect the Legislature

had evidently placed on the connecting phrase "and in addition," and given the retention of the default language limiting who could benefit from wrongful death claims, we cannot view the legislative history as the Smiths suggest.

[¶28]  The 2009 amendment that eliminated any identification of who must sustain a pecuniary loss for the loss to be compensable yields language that has a cascading textual effect.  As it existed at the time of Smith's death, section 2-804(b) provided for recovery of "pecuniary injuries" in an amount that reflects "fair and just compensation."   18-A M.R.S. § 2-804(b) (2017). Someone who has no expectation of future financial benefit from the decedent has not suffered any such "injuries" resulting from the death, and for that reason there would be no basis for any "compensation."  *Id.*  Given that the Legislature has not more clearly evinced an intent to make a fundamental change to the construction and application of the law that we had repeatedly announced in our case law, which we discuss below, *see infra* ¶¶ 30-32, we continue to view the statutory notions of "injuries" and "compensation" in reference entirely to those who can establish some economic loss caused by a wrongful death.  Here, there are no such people—there is no one who will have been pecuniarily injured within the measure of the statute.

[¶29]  For these reasons, the legislative history supports the conclusion that the version of section 2-804(b) at issue here did not permit recovery for pecuniary injury alleged to have been suffered by the estate itself.   We now turn to another germane extrinsic interpretive principle, that statutes enacted in derogation of the common law are to be construed strictly.

## C.      Construction of a Statute Enacted in Derogation of the Common Law

[¶30]  To the extent a statute may impinge on the common law, we will construe the statute strictly and not in a way that would extend its reach by implication.  *Churchill*, 380 A.2d at 192.  We therefore begin this part of our analysis by examining the common law.

[¶31]  At common law, no one—not even a "widow, children or heirs"— could seek compensation for pecuniary injury arising from a wrongful death. *McKay v. New England Dredging Co.*, 92 Me. 454, 458, 43 A. 29, 29 (1899).  The common law has not changed, but England's 1846 enactment of "Lord Campbell's Act" and similar legislation developed elsewhere created a new, statutory cause of action providing for such a right.   *Thorbjohnson v. Rockland-Rockport Lime Co.*, 275 A.2d 588, 593 n.4 (Me. 1971); *Ames v. Adams*, 128 Me. 174, 175-76, 146 A. 257, 257 (1929); *McKay*, 92 Me. at 458, 43 A. at 29. These enactments included a Maine statute, a predecessor to section 2-804(b),

that became law in 1891. *See McKay*, 92 Me. at 458, 43 A. at 29; P.L. 1891, ch. 124 (approved Mar. 31, 1891).

[¶32] Although the Maine statute created a limited right to compensation for pecuniary loss, it drew a hard line precluding an estate itself from any such recovery. *See McKay*, 92 Me. at 458, 43 A. at 30 (holding that the pecuniary "injury for which damages can be recovered must be *wholly to the beneficiaries themselves*, and it is limited to the pecuniary effect of the death *upon them*" (emphases added)). Only the decedent's beneficiaries or financial dependents could recover for *their* loss. *Conley v. Me. Cent. R.R. Co.*, 95 Me. 149, 153, 49 A. 668, 670 (1901) (stating that the applicable wrongful death statute allowed for recovery "of pecuniary benefits which the widow and children have probably lost by his death, and no more"); *Milton v. Cary Med. Ctr.*, 538 A.2d 252, 254 (Me. 1988) (noting that the Wrongful Death Act "originally provided for damages based only on the 'pecuniary injuries' to the beneficiaries"); *Thorbjohnson*, 275 A.2d at 593 n.4; *Ames*, 128 Me. at 176, 146 A. at 257 (stating that the wrongful death statute is "for the benefit of the next of kin and ignores the estate"); *McKay*, 92 Me. at 458, 461, 43 A. at 31 (stating that, to the extent that the beneficiaries' "condition was made less fortunate pecuniarily by the wrongful act or default of the defendant, *they* are entitled to recover enough

damages to make *them* 'a fair and just compensation'" (emphases added)). Therefore, the common law bar against recovery *by an estate* for pecuniary injuries remained intact.

[¶33]  Here, the reading of section 2-804(b) urged by the Smiths would encroach on the common law principle that an estate cannot recover for pecuniary injuries resulting from a wrongful death.  Indeed, although the point is minimized by the dissent, Dissenting Opinion ¶ 58, the Smiths rightfully acknowledge that their contention would constitute a "shift" in the meaning and scope of the statute.  An expansion of the universe of those who may recover for pecuniary injuries to now include an estate itself is contrary to the common law bar.  Given that the statute's language and legislative history do not support that conclusion, we decline to broaden the statute's reach by implication to obtain that result.[15]

---

[15]  As the dissent and the Smiths correctly point out, Dissenting Opinion ¶ 57 & n.24, over the decades, and even since the 2009 amendment we discuss in the text, the Legislature has enacted a number of changes to the Wrongful Death Act.  These amendments included adding categories of recoverable damages and increasing the statutory limits on recoveries for specific losses.  *See* Office of Policy and Legal Analysis Public Hearing Summary for J. Standing Comm. on Judiciary, Historical Summary: Maine Wrongful Death Statutory Damages, L.D. 428 (Feb. 2009).  The amendments also include a reformulation of the category of persons who are entitled to recover wrongful death damages, so that they now simply comprise the decedent's heirs, rather than various combinations set out in the statute applicable here of a surviving spouse and children, or, if there is no surviving spouse or children, the heirs.  *See* 18-C M.R.S. § 2-807(b) (2025).  Based on this history, the dissent and the Smiths assert that the expanded construction they propose is in line with a legislative pattern of augmenting claimants' rights under the Act and that it is not a reach to conclude that the Legislature intended to allow an estate to recover for a pecuniary loss.  *See* Dissenting Opinion ¶ 57. The amendments, however, do not suffer from the problem we address here, namely, statutory

[¶34]  Additionally, if the statute became a vehicle allowing any of the beneficiaries described at the beginning of the statute to recover for a pecuniary loss they would not have experienced, the statute would be in derogation of the black-letter common law principle that, in order to support compensatory damages, the wrongful conduct must have been the proximate cause of the underlying loss *to the claimant*. *See, e.g., Toto v. Knowles*, 2021 ME 51, ¶ 10, 261 A.3d 233 ("Proximate cause is an action . . . that produces an injury that would not have occurred but for the action." (quotation marks omitted)); *Mastriano v. Blyer*, 2001 ME 134, ¶ 11, 779 A.2d 951 (stating that, in a claim for negligence, the plaintiff must prove "a duty owed, breach of that duty, and *an injury to the plaintiff* that is proximately caused by a breach of that duty" (emphasis added and quotation marks omitted)).

[¶35]  Here, there is no dispute that the Smiths have not suffered, and will not sustain, a loss of pecuniary benefit caused by their son's death.  Construing section 2-804(b) in a way that would nonetheless allow them to recover

---

ambiguity, and they are not a proper basis on which to conclude that the Legislature must have intended to expand the estate's rights because it broadened other, separate aspects of the Act.  And, notably, even though the Legislature has redefined the universe of those who are entitled to recover damages, it took no action that would have made clear that an estate itself may recover for pecuniary injuries.  Therefore, to the extent that the dissent and the Smiths attach significance to the changes arising from the 2019 recodification of the Probate Code that govern who is entitled to receive wrongful death damages, their position paradoxically highlights the *absence* of any statutory changes that bear directly on the parties' dispute in this case.  *See* Dissenting Opinion ¶ 57 & n.24.

damages for pecuniary injuries, albeit through the Estate, would be in derogation of the common law because, as profound as their loss is, it does not encompass pecuniary harm. Without a clearer expression of legislative intent to do so, we decline to extend the reach of section 2-804(b) in that way.[16]

[¶36]    Embracing the sentiment of the legislator who sponsored the 2009 proposed amendments to sections 2-804(b) and 3-817(a), the Smiths also assert that the reading of section 2-804(b) we adopt here is inequitable, perpetuates a disparity, and creates arbitrary results because the extent of a tortfeasor's liability would be a function of the circumstances of the claimants. This would be because, for example, if there were no survivors suffering pecuniary injury who had a relationship with the decedent or the estate described in the second sentence of the statute, the amount of the defendant's liability would be less than it would be otherwise. The Smiths characterize this result as arbitrary and a "consequence of circumstance."

---

[16] The Smiths, as the statutory wrongful death beneficiaries, were able to recover damages for their son's conscious pain and suffering even though he—and not they—sustained that injury, meaning that Henson's negligence did not cause that damage to them even though the damages would be awarded to them directly. *See* 18-A M.R.S. § 2-804(c). Unlike section 2-804(b)'s pecuniary loss provision, however, section 2-804(c) clearly and explicitly authorized the Smiths to pursue a claim for the pain and suffering their son endured. Because that provision of the statute was unambiguous, it was sufficient to overcome the interpretive principle against allowing the common law to be superseded by implication. *Churchill v. S.A.D. No. 49 Tchrs. Ass'n*, 380 A.2d 186, 192 (Me. 1977). In contrast, as we have explained in the text, the provision in section 2-804(b) germane to pecuniary injuries makes no express or clear provision for an estate to recover for pecuniary injuries, thereby running into the inhibiting principle of statutory interpretation faced by a party who urges a construction that would override the common law.

[¶37]  This argument has it backward.  The objective in determining the amount of compensatory damages is not to make awards that are uniform across unrelated cases but rather to individualize each award based on who is entitled to recover and what amount of damages represents fair compensation for proven losses sustained by the person entitled to recover.  *See Carter v. Williams*, 2002 ME 50, ¶ 9, 792 A.2d 1093.  Compensatory damages are individualized because the quantitative outcome of a case is defined by what amount is proper to make a particular injured party whole.  *See Snow v. Villacci*, 2000 ME 127, ¶ 9, 754 A.2d 360.  Those determinations necessarily will vary from case to case.

[¶38]  The disparate nature of compensatory damages as a function of who may assert a claim is not unfamiliar in tort law.  For example, if the party who is the direct victim of tortious conduct is married and the spouse suffers a loss of consortium resulting from the direct victim's injuries, the spouse may recover for damage to the interest the spouse has in "the company, society, cooperation, affection, and aid" that characterize a marriage.  *Hardy v. St. Clair*, 1999 ME 142, ¶ 8 & n.3, 739 A.2d 368, *overruled in part on other grounds by Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶ 23, 960 A.2d 1188; *see* 14 M.R.S. § 302 (2025).  But a wrongdoer engaging in the identical tortious conduct could

*not* be held liable for any loss of consortium if the injured party did not have a spouse. *See Sawyer v. Bailey*, 413 A.2d 165 (Me. 1980); *cf. Hardy*, 1999 ME 142, ¶ 8 & n.3, 739 A.2d 368. The Legislature has determined that even if the injured party is unmarried but is part of a relationship that in every other way mirrors that of married persons, a consortium claim does not lie—entirely because of the same "consequence of circumstance" that the Smiths contend should allow them to recover here for pecuniary injuries. *See Sawyer*, 413 A.2d 165; 14 M.R.S. § 302 (limiting actions for loss of consortium to "married person[s]").

[¶39] Variability is also built into the wrongful death statute itself. If a person for whose benefit the action is brought is particularly close to the decedent—say, a surviving spouse or child—that person might secure a significant recovery for the loss of comfort, society, and companionship of the decedent as allowed by section 2-804(b). But if the claimant is an heir—another statutorily proper claimant for those damages—who had only a distant relationship with the decedent, an appropriate amount of compensatory damages would be nominal at most. This disparity is not arbitrary, because it is attributable entirely to the breadth of the range of claimants whom the Legislature, in its judgment, has authorized to pursue a wrongful death action.

[¶40] Given that the cause of action for wrongful death is wholly statutory, it is exclusively for the Legislature to determine who is—and who is not—entitled to obtain compensatory damages for specified wrongful death injuries. Any asserted inequity or disparity is for the Legislature to consider and resolve. Just as a consortium claim may be asserted only by a spouse, in a wrongful death action the Legislature has authorized recovery for pecuniary injuries sustained by certain individuals, but not by an estate itself. This is not an arbitrary demarcation but rather reflects the evident intent of the Legislature and is entirely consistent with the historical parameters of the wrongful death statute and the common law tradition, neither of which allows the estate to recover for pecuniary injuries.

## III. CONCLUSION

[¶41] Our decision today is not based on policy. Any wrongful death claim arises by statute alone. Consequently, it is for the Legislature to weigh relevant interests and objectives to determine the scope of recovery for that cause of action. [17] *See Harding v. Wal-Mart Stores, Inc.*, 2001 ME 13, ¶ 15, 765

---

[17] The amici, in particular, have presented policy-based arguments. The Maine Trial Lawyers Association, for example, raises contentions about loss allocation and reported modern trends in the compositions of families. For their part, the brief submitted jointly by the medical and insurance organizations discusses how the availability and costs of healthcare would be affected if section 2-804(b) were construed as the Smiths advocate. These points may be worthy considerations in the legislative arena but not as part of our effort to determine what the statute means.

A.2d 73 ("It is not our role to second guess the Legislature. The Legislature is the appropriate body for weighing the competing interests at stake."). While even Henson acknowledges that the Legislature *could* have enacted a law supportive of the Smiths' position here, our role and responsibility is solely to ascertain what policy choice the Legislature *in fact* made, as revealed in section 2-804(b) construed through the analytical tools of statutory interpretation.

[¶42]  For the reasons set out in this opinion, we interpret section 2-804(b) to have barred a wrongful death claimant from seeking and recovering compensatory damages for pecuniary loss suffered by the estate itself.  In the case before us, it is undisputed that neither of the Smiths will suffer pecuniary injury because of their son's death.  Consequently, section 2-804(b) precludes Henson from being held liable on that part of the claim.

The entry is:

> The portion of the judgment based on the jury verdict for pecuniary injuries is vacated.  All other aspects of the judgment are unaffected by this appeal.  Remanded for entry of a modified judgment consistent with this opinion.

------

30

DOUGLAS, J., with whom STANFILL, C.J., joins, dissenting.

[¶43]  I agree with the Court that a wrongful death claim is "wholly statutory" and that "it is for the Legislature to weigh relevant interests and objectives to determine the scope of recovery for that cause of action."  Court's Opinion ¶¶ 40-41.  *See McKay v. New England Dredging Co.*, 92 Me. 454, 458, 43 A. 29, 29 (1899) ("The right to any compensation [in a wrongful death action] is wholly created by the statute, and the amount of the compensation is to be measured solely by the standard prescribed by the statute.").  I also agree that "[i]t is not our role to second guess the Legislature," *Harding v. Wal-Mart Stores, Inc.*, 2001 ME 13, ¶ 15, 765 A.3d 73, and that "our role and responsibility is solely to ascertain what policy choice the Legislature *in fact* made" with respect to what damages are recoverable in a wrongful death action, Court's Opinion ¶ 41.  Our "single goal," therefore, in construing a statute "is to give effect to the Legislature's intent in enacting the statute."  *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621.  The Court's decision today does not do so.  I therefore respectfully dissent.

[¶44]  The Court concludes that the pertinent language in 18-A M.R.S. § 2-804(b) (2017) is ambiguous essentially because of the "disjunctive effect,"

Court's Opinion ¶ 23, of the phrase "and in addition" found in section 2-804(b)'s third sentence:

> The jury may give damages as it determines a fair and just compensation with reference to the pecuniary injuries resulting from the death *and in addition* shall give such damages that will compensate the estate of the deceased person for reasonable expenses of medical, surgical and hospital care and treatment and for reasonable funeral expenses.

18-A M.R.S. § 2-804(b) (emphasis added); *see* Court's Opinion ¶¶ 14-20. Because of the ambiguity, the Court turns to legislative history for guidance, and in so doing concludes that "retention of the *identical* phrase"—"and in addition"—signals "no clear intent to change the effect of the sentence" because that phrase acts "as a wall between the two parts of the sentence, creating separate rights of recovery that were not subject to intermingling." Court's Opinion ¶¶ 22-24. The Court determines that therefore it was the Legislature's intent to continue measuring damages for pecuniary injuries based on the economic hardship suffered directly by the decedent's surviving dependents— "the persons for whose benefit the action is brought"—despite a 2009 amendment's removal of that very language from the statute. 18-A M.R.S. § 2-804(b).

[¶45]  Curiously, the Court gives great weight to what the Legislature did *not* change—that is, retention of the phrase "and in addition"—rather than

focusing on what it actually *did* change—that is, deletion of a key phrase defining the nature of "pecuniary injuries." *See* P.L. 2009, ch. 180, § 1 (effective Sept. 12, 2009). "When a statute is revised, and a provision contained in it is omitted, the inference to be drawn from such a course of legislation is that a change in the law was intended to be made. The omitted provision is not to be revived by construction." *Guilford & Sangerville Water Dist. v. Sangerville Water Supply Co.*, 130 Me. 217, 222, 154 A. 567, 569 (1931) (citations omitted); *see also City of Augusta v. Town of Mexico*, 141 Me. 48, 51, 38 A.2d 822, 823 (1944) (concluding that the deletion of a phrase when amending a statute "raises an inference that a change in the law was intended" and that we "must not assume that such omission was accidental and then by construction insert what may have been omitted by design").

[¶46] In my view, the Court's analysis misses the proverbial forest for the trees and is flawed in two fundamental respects. First, the Court discounts the basic structure of section 2-804(b) by conflating two distinct components of a wrongful death action: *who* is entitled to recover damages and *what* damages are recoverable. Second, it disregards the legislative purpose animating the 2009 amendment to section 2-804(b).

## A.    Text and Structure

[¶47]  Close examination of section 2-804(b) reveals a logical, orderly structure of the statutory cause of action for wrongful death applicable here. The section's first sentence defined who had standing to bring the action—"the personal representative of the deceased person."  *Id.*  Its second sentence set out the persons entitled to receive "[t]he amount recovered," with priority given to the decedent's dependents, beginning with the spouse and minor children, if any, and then defaulting to the intestacy statutes, "except as otherwise provided."[18]  *Id.*

[¶48]  The next three sentences identified the damages recoverable by those named in sentence two.  They provided that a jury "may give" damages for pecuniary injuries (third sentence), loss of consortium and emotional distress (fourth sentence), and punitive damages (fifth sentence).  *Id.*  A fourth category of damages was authorized for "medical, surgical and hospital care and treatment and for reasonable funeral expenses" (also in the third sentence).  18-A M.R.S. § 2-804(b).  This final category of damages was distinct

---

[18]  This "exception clause" was clearly necessitated by the fact that, as discussed above, the statute provided that the decedent's estate itself, which was not included in the list of beneficiaries in section 2-804(b)'s second sentence, was entitled to reimbursement over and above any damages recoverable by those identified in sentence two.  *See* 18-A M.R.S. § 2-804(b) (2017).

34

in two ways. The statute used mandatory language—"shall give"—to require that a jury award these damages when liability was found, and it directed that the damages be paid *to the estate* as reimbursement for the specified expenses.[19]

[¶49] Thus, *who* was entitled to recover damages in a wrongful death action—the decedent's dependents and/or intestate beneficiaries—was set out in section 2-804(b)'s second sentence. *What* damages could be recovered were defined in sentences three (pecuniary injuries), four (loss of consortium and emotional distress), and five (punitive damages).[20] *Id.*

[¶50] The text and structure of the statute supported the trial court's ruling that an award of damages for pecuniary injury be based on "the loss of the deceased's future earnings, regardless of whether the estate's beneficiaries suffered any actual loss." The Court concludes that section 2-804(b) is ambiguous and that resort to legislative history is warranted. Court's Opinion ¶ 20. Even if the statute is viewed as ambiguous, the legislative history

---

[19] The final three sentences of section 2-804(b) established a limitations period for wrongful death actions and addressed distribution of amounts recovered if the claim settled. *See* 18-A M.R.S. § 2-804(b) (2017).

[20] In addition, section 2-804(c) provided for recovery of damages for the decedent's pain and suffering when "death ensue[d] following a period of conscious suffering." 18-A M.R.S. § 2-804(c) (2017).

decidedly resolves any ambiguity in favor of the trial court's ultimate determination.

## B.     Legislative History and Purpose

[¶51]   Prior to the 2009 amendment, section 2-804(b) provided the following with respect to pecuniary injuries:

> The jury may give such damages as it determines a fair and just compensation with reference to the pecuniary injuries resulting from the death *to the persons for whose benefit the action is brought* . . . .

18-A M.R.S. § 2-804(b) (2008) (emphasis added).  The clause italicized above clearly modified the phrase "pecuniary injuries," thereby providing that the "fair and just compensation" that could be awarded to the decedent's survivors (identified in the statute's second sentence) was compensation for "the pecuniary injuries . . . *to the persons for whose benefit the action is brought*."  *Id.* (emphasis added).  This was identical to the language used to define the nature of the damages authorized for loss of consortium and emotional distress:

> [D]amages not exceeding $500,000 for the loss of comfort, society and companionship of the deceased, including any damages for emotional distress arising from the same facts as those constituting the underlying claim, *to the persons for whose benefit the action is brought* . . . .

*Id.* (emphasis added).

[¶52]  Because we reject interpretations that render any portion of a statute surplusage, *Dickau*, 2014 ME 158, ¶ 22, 107 A.3d 621, the italicized clauses common to the definitions of damages recoverable for pecuniary injuries and emotional distress prior to 2009 cannot have described *who* could recover those damages because that was already unambiguously set out in section 2-804(b)'s second sentence.  Consistent with the statute's language and structure, both clauses therefore defined in their respective contexts *what* damages could be recovered.  In actions filed under the pre-2009 version of section 2-804(b), damages for loss of consortium and for pecuniary injuries were measured by the injuries suffered by the decedent's dependents or the beneficiaries themselves.

[¶53]  The 2009 amendment to section 2-804(b) changed the measure of damages for pecuniary injuries.  During the First Regular Session of the 124th Maine Legislature, a bill was introduced to amend the wrongful death statute in two ways: (1) to increase the cap on punitive damages from $75,000 to $250,000 and (2) to change the method of calculating pecuniary damages so that it would no longer be measured by the economic loss to the decedent's survivors but rather by the overall "loss to the estate," meaning what the decedent's net lifetime earnings would have been but for the death.  L.D. 428

(124th Legis. 2009).  The testimony offered by the sponsor of the bill expressly spelled out the latter objective:

> The second portion of the bill addresses the issue of economic damages.  The amount of economic damage in a wrongful death action is currently determined by <u>who</u> survives the decedent which can lead to some very inequitable results.  If a victim with a substantial income leaves a wife and minor children substantial economic damages are allowed.  However, if the same victim has no spouse or minor children there is no economic loss.  *The question raised by this bill is whether economic loss should be determined solely by who survives, or upon the economic loss to the estate due to the wrongful death.*

*An Act To Amend the Intestate Succession and Wills Laws Concerning Wrongful Death: Hearing on L.D. 428 Before the J. Standing Comm. on Judiciary*, 124th Legis. (2009) (testimony of Rep. Cynthia Dill) (emphasis added).

[¶54]  Section 1 of L.D. 428,[21] which is set out in its original, marked-up format below, proposed two substantive amendments to the text of 18-A M.R.S. § 2-804(b) (as well as minor stylistic changes):

---

[21]  L.D. 428 (124th Legis. 2009) had two sections.  Section 1 is set out in the text.  Section 2 proposed to amend the so-called survival statute, which at the time was codified in 18-A M.R.S. § 3-817 (2008).  It purported to clarify that a claim for pecuniary losses was not lost by the death of a party.  Although the bill's sponsor may have intended section 2 to supplement the stated purpose of the bill—to change the method of measuring damages for pecuniary injuries in section 2-804(b)— the amendment in proposed section 2 was both unnecessary in its own right and not relevant to an action for wrongful death.  Under the survival statute, a cause of action for harm suffered between the moment of injury and the moment of death already included the right to recover for pecuniary loss (including loss of income) that results from a negligently inflicted injury.  18-A M.R.S. § 3-817 (2008), *repealed and replaced by* P.L. 2017, ch. 402, §§ A-1 to A-2, F-1 (effective July 1, 2019) (codified at 18-C M.R.S. § 3-817 (2025)).  Moreover, as the Court notes, "[w]rongful death actions and rights are not in the category of cases affected by section 3-817(a)."  Court's Opinion ¶ 24 n.14.  The

**Sec. 1.  18-A MRSA § 2-804, sub-§(b)**, as amended by PL 2007, c. 280, § 1, is further amended to read:

**(b).** Every ~~such~~ <u>wrongful death</u> action must be brought by and in the name of the personal representative of the deceased person~~, and the~~<u>. The</u> amount recovered in every ~~such~~ <u>wrongful death</u> action, except as otherwise provided, is for the exclusive benefit of the surviving spouse if no minor children, ~~and~~ of the children if no surviving spouse, ~~and~~ one-half for the exclusive benefit of the surviving spouse and one-half for the exclusive benefit of the minor children to be divided equally among them if there are both surviving spouse and minor children~~,~~ and to the deceased's heirs to be distributed as provided in section 2-106 if there is neither surviving spouse nor minor children.  The jury may give ~~such~~ damages as it determines a fair and just compensation with reference to the pecuniary injuries resulting from the death **~~to the persons for whose benefit the action is brought~~** and in addition shall give such damages ~~as~~ <u>that</u> will compensate the estate of the deceased person for reasonable expenses of medical, surgical and hospital care and treatment and for funeral expenses~~, and in.~~ <u>In </u>addition<u>, the jury</u> may give damages not exceeding $500,000 for the loss of comfort, society and companionship of the deceased, including any damages for emotional distress arising from the same facts as those constituting the underlying claim, to **the persons for whose benefit the action is brought**~~, and in addition~~<u>.</u> <u>The jury</u> may <u>also</u> give punitive damages not exceeding ~~$75,000, provided that~~ <u>$250,000 if</u> the action is commenced within 2 years after the decedent's death.  If a claim under this section is settled without an action having been commenced, the amount paid in settlement must be distributed as provided in this subsection.  ~~No~~ <u>A</u> settlement on behalf of minor children is <u>not</u> valid unless approved by the court, as provided in Title 14, section 1605.

L.D. 428 (124th Legis. 2009) (emphasis in bold added).

---

proposed amendment in section 2 was unrelated to section 1 and bore no relevance to a wrongful death action, a cause of action which arises only upon the decedent's death.

[¶55]  Section 1 of L.D. 428 was enacted essentially unchanged.[22]  *See* P.L. 2009, ch. 180, § 1 (effective Sept. 12, 2009).  It appears that the two objectives of the bill were achieved.  First, the statute was amended to raise the cap on punitive damages from $75,000 to $250,000.  *Id.*  Second, the amended statute no longer modified the clause that allowed damages for "pecuniary injuries resulting from the death" with the phrase "to the persons for whose benefit the action is brought."  *Id.*  By eliminating this phrase, the Legislature was not changing to *whom* the damages were paid; it was changing *how* the damages were measured—i.e., *what* damages were recoverable.  Again, this is plain not only from the structure of section 2-804(b) but also from the 2009 amendment to section 2-804(b), which implemented the express intent of the bill's sponsor.

[¶56]  Before 2009, therefore, the "pecuniary injuries" for which damages were awardable were pecuniary injuries *to the persons for whose benefit the action was brought.*  Again, the loss-to-survivor approach mirrored the manner in which damages for loss of consortium and emotional distress were (and still are)  determined—the injuries suffered by *the persons for whose benefit the*

---

[22]  The only difference between section 1 of L.D. 428 and the enacted law, P.L. 2009, ch. 180, § 1 (effective Sept. 12, 2009), was that the statute of limitations was set out in a separate sentence to make clear that it applied to all wrongful death actions.  *See* Comm. Amend. A to L.D. 428, No. H-212 (124th Legis. 2009).

40

*action is brought.*  With the 2009 amendment, though, it is apparent that the Legislature intended that damages for pecuniary injuries be decoupled from the actual injury suffered by dependents and measured instead by the overall loss to the estate.  This was not intended, as the Court suggests, to affect *who* receives the damages but rather *what* damages could be recovered.

[¶57]  The loss-to-estate approach for determining damages recoverable by beneficiaries in a wrongful death action has been adopted in several other states.  *See, e.g.*, Ga. Code Ann. §§ 51-4-1 to 51-4-2 (West, Westlaw through Act 6 of the 2025 Reg. Sess.); Ky. Rev. Stat. Ann. § 411.130 (West, Westlaw through laws effective Apr. 10, 2025, and the Nov. 5, 2024, election); R.I. Gen. Laws Ann. §§ 10-7-1 to 10-7-2 (West, Westlaw through Chapter 4 of the 2025 Reg. Sess.);[23] *see also* 2 James E. Rooks, Jr., *Recovery for Wrongful Death* §§ 12:52-12:60 (2023-2024 ed. 2023).  Although this may be the minority approach, it is still a policy decision to be made by the Legislature, not the Court.  *See McKay*, 92 Me. at 458, 43 A. at 29; *Harding*, 2001 ME 13, ¶ 15, 765 A.3d 73; *see also*

---

[23] Rhode Island's wrongful death statute, for example, uses a loss-to-estate basis for measuring pecuniary damages and a loss-to-survivor basis for measuring damages for loss of consortium. *See* R.I. Gen. Laws Ann. § 10-7-1.1 (West, Westlaw through Chapter 4 of the 2025 Reg. Sess.) (measuring pecuniary damages by determining the gross amount of the decedent's prospective earnings over the remainder of the life expectancy less estimated personal expenses); *id.* § 10-7-1.2 (measuring loss of consortium by defining a beneficiary's loss of the decedent's society and companionship and the beneficiary's distress and grief from the decedent's death).

Restatement (Second) of Torts § 925 (Am. L. Inst. 1979) ("The measure of damages for causing the death of another depends upon the wording of the statute creating the right of action and its interpretation."). And it is consistent with the Legislature's pattern of expanding the scope of the remedies available in wrongful death actions since 2009.[24]

[¶58] Finally, I agree with the Court that we construe statutes strictly when they are "enacted in derogation of the common law." Court's Opinion ¶ 29. However, that principle of statutory construction has little currency here. As the Court itself acknowledges, Court's Opinion ¶¶ 31-32, the common law did not recognize actions to compensate a decedent's survivors for injuries arising from a death wrongfully caused. Such an action is "wholly statutory." Court's Opinion ¶ 40. Therefore, the baseline for analyzing the effect of a statute's amendment, including here the 2009 amendment to 18-A M.R.S.

---

[24] In 2016, the Legislature extended the limitations period from two years to six years in wrongful death cases arising from homicide. *See* P.L. 2015, ch. 451, § 1 (effective July 29, 2016). In 2019, the wrongful death statute moved to 18-C M.R.S. § 2-807 as part of the recodification of the Probate Code, and the specific prioritization of spouses and minor children as beneficiaries was changed to a determination of beneficiaries in accordance with the general intestacy statutes. P.L. 2017, ch. 402, §§ A-1 to A-2, F-1 (effective July 1, 2019); P.L. 2019, ch. 417, §§ A-3, A-103, B-14 (emergency, effective June 20, 2019). In 2019, the cap on nonpecuniary damages was raised from $500,000 to $750,000. P.L. 2019, ch. 198, § 1 (effective Sept. 19, 2019). In 2023, the Legislature made additional changes, including extending the limitations period from two years to three years, raising the cap on nonpecuniary damages from $750,000 to $1,000,000 with an automatic inflationary adjustment, and increasing the limit on punitive damages from $250,000 to $500,000. P.L. 2023, ch. 390, § 3 (effective Oct. 25, 2023).

42

§ 2-804(b), is not the common law; it is the language of the predecessor statute itself.

[¶59] It is quite evident from the textual change made to the prior statute and the express impetus for the 2009 amendment as reflected in the legislative history that the Legislature intended to alter the manner in which economic damages in wrongful death actions are measured.[25]

[¶60] I would affirm the judgment.

---

Christopher C. Taintor, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellants John R. Henson, Mercy Hospital, and Eastern Maine Healthcare Systems

Jodi L. Nofsinger, Esq., Sarah K. Hall, Esq., and Alicia F. Curtis, Esq. (orally), Berman & Simmons, P.A., Lewiston, for appellees Angela M. Smith and Richard Smith as Personal Representatives of the Estate of Peter A. Smith

Stephen W. Koerting, Esq., Kelly, Remmel & Zimmerman, Portland, for amicus curiae Maine Trial Lawyers Association

---

[25] Another court applying Maine's wrongful death statute interpreted the 2009 amendment as altering the method of measuring damages for pecuniary injuries. *See Fitzpatrick v. Cohen*, 777 F. Supp. 2d 193, 194-95 (D. Me. 2011) (accepting that the 2009 amendment to 18-A M.R.S. § 2-804(b) "remov∫[ed] [the] requirement that any provable loss be tied to a particular beneficiary"); *see also* Simmons, Zillman & Furbish, *Maine Tort Law* § 19.06 at 19-29 (2018 ed. 2017) ("Damages recoverable under the Wrongful Death Act include damages for pecuniary loss resulting from the decedent's death. These damages should be measured in terms of the present worth of the future pecuniary benefits lost as a result of the decedent's death. Damages under the Act were originally limited to pecuniary injuries suffered by the beneficiaries." (footnotes omitted)).

Robert P. Hayes, Esq., Maureen M. Sturtevant, Esq., and James P. Spizuoco, Esq., Drummond Woodsum, Portland, for amici curiae Maine Medical Association, Maine Hospital Association, Maine Osteopathic Association, and Maine Association of Insurance Companies

Cumberland County Superior Court docket number CV-2021-151
FOR CLERK REFERENCE ONLY